My name is Howard Davis. I'm representing the petitioner Alec DePereyan. In this case, there is no substantial evidence to support any of the immigration judge's adverse credibility findings as well as the frivolousness finding. It seems to me like there's a fairly significant amount of it with respect at least to his findings that the letters submitted from the hospital and from the police were fraudulent and that there's nothing to show that his wife was actually, or his wife and kids were actually taken hostage at the time that he left. Okay. First of all, with regard to the letters and the fraud issue, the thing is that you look at a case like Imani Berhe, there has to be some sort of a finding at least to that the individual here, Alec DePereyan, actually was aware. And he, when he talked about Was aware of what, counsel? Was aware of the alleged fraud involved in either of the letters, both the police letters and the medical letters. And there's no, first of all, there was no finding of that. And at the record on page 121 That case is distinguishable. I mean, because that was the only adverse credibility determination. And I've just suggested that there are at least two, putting aside all the others, that survived. And so, I mean, you know, the case isn't on all fours. And you've just got a situation here where it just is so obvious that the documents were ginned up. And so, I mean, you know, the case is distinguishable. But there's no, but as Mr. DePereyan said, he didn't know how his wife obtained the letters. And So he's not acting for him. But he didn't know. I mean, if Well, you can always say that. Of course, he wasn't physically there. But at the same time, the judge, I mean, nobody asked him if he even knew about it. So there didn't seem to be any kind of Let's say that he didn't. Let's just suppose he said, I didn't know about it. I mean, aren't you just slightly responsible for what information you put into a court record in order to get a benefit from the United States government? Well, but the thing is, is that, I mean, in questioning, and I know this might be answering a question with a question here and all, but again, when you look at Imani Berhe, I mean I think there was only one, that was the only basis there. It was the only basis of a credibility determination. I mean, the I.J. there relied solely on the forged letter, because otherwise the alien was credible. Here, that's not so. Here, there are a ton of bases upon which the alien wasn't credible. But let's just suppose there's only one more, which is the one I mentioned. But the thing is, is that, again, the judge has to make or Why? Because the judge is a finder of fact. He has to find that the person actually know. He just, he has to, the judge has to confront You're repeating something without explaining to me why that should be so. Because otherwise, how can the judge know what is in the mind of the Who cares? I mean, that's why I'm trying to get you to tell me. The case that you're relying on was one in which the sole basis of credibility was the forgery. And we said, you know, look, in that circumstance, then you've got to show knowledge. Here, that's not true. There are a lot of bases upon which the judge found that he was not credible. But I mean, it's also part of the argument here that all the other bases were either he wasn't confronted on, they're either irrelevant But that can't be so with respect to whether his wife and children were taken hostage because his wife could and didn't submit just a letter, anything. Well, he, I mean, he did explain that he thought that he could explain it orally there. Now, the judge doesn't, neither the judge did not address that. I mean, the judge is I can understand that for purposes of the adverse credibility decision, that the finding of knowing may not be required. But for purposes of the frivolous application, conclusion, which has to do with the fact that the judge has not a tremendous future impact, doesn't the statute actually require that the IJ make that finding? Yes, it does. And then in fairness Were you just arguing as to the adverse credibility? I was looking at the adverse credibility, but certainly with frivolous, there has to be a specific In fact, there's no reasoning with regard to frivolousness in the decision. It comes like in the order. There's no even mention of it in the body of the judge's decision. Your best argument is that the Code of Federal Regulations requires the IJ to make a finding of fact on that for frivolous application. For frivolousness, he did not do that. Right. And that's a separate from your other claims. With regard to the fraudulent letters, I mean, there still has to be some knowledge that Well, actually, Yemane says knew or should have known. Pardon me? Yemane says knew or should have known. But the thing is, is that there was no The judge didn't inquire into how he should have known. He was in detention at the time in Lancaster. And so it's relying on one sister to ask his wife. It's already a couple removed. So and there was also this bureau involved in getting it, which was also a problem. I mean, there was like three or four people removed. How is he supposed to know? And the judge didn't make any findings about it. There has to be some sort of whether he should have known. The judge at least should have confronted him on that. And that's one of the themes of my brief, is that he didn't confront him on some But, you know, in this case, didn't he continue it three times? And two of the times he continued it was exclusively to find out the to have the government investigate these documents. I mean, your client was certainly on notice that the documents authenticity was being questioned. Correct. But there but again, the judge has to There has to be some sort of confronting and dealing with it specifically on the record. And that didn't happen, regardless of how many times it was. Perhaps on the issue of the frivolousness issue. But when it comes to the adverse credibility under the Lee case, if the shall I say the misrepresentations go to the very heart of the application, the judge is entitled to do what he did, isn't it? But if you find that there's misrepresentation, and my argument and my problem here is that the judge did not really go into that as What do you think? I mean, are you arguing that any of these points about the because specifically the apostolate was stamped and each letter was a known fake apparently and that was there was testimony about that. That no, Dr. Arkhipova worked in Malalitia. The police officer signing the letter from the police did not exist. And the police used different letterhead and stamps than those found on the letter. That was all that was all testimony that came out at the IJ hearing, was it not? Yes. And what more does the IJ have to do on that issue? What the IJ has to do is is to go is to specifically confront the Mr. Deparian or anyone with that and and go in and explore the person's knowledge of any of this. And the only thing that's in the record about it is that, you know, he didn't know how his wife got the letters. And like I said, there were there was the wife, the sister, the bureau. I mean, several people removed. And there's no indication that he has any independent knowledge of what an apostille should look like. I mean, this is in an area of expertise that there was no. So you're saying that the government has to show what the applicant was thinking and what he knew. It's almost a mens reo requirement that you're asking for. I mean, even though and I still and if you're saying that a person committed fraud, he has to or misrepresentation. He has to know that what he is doing is a lie. Well, that's with respect to frivolousness. But with respect to the adverse credibility, where is the requirement in the rule that the judge has to find a mens reo with respect to these representations? Well, I mean, that's I mean, it's I would say that I think that in the money bear that there has to be some. I mean, an independent driver's distinguished that case. But only based on, you know, whether or not there was a bit on whether or not there were other things in the record that went to adverse credibility or not. But I mean, but at least the initial analysis, the money there. Hey, I think requires that the person has to know about that and that finding simply wasn't made. OK. I want to save some time. Mr. Evans. Please, the court. I'm Manning Evans representing the government in this matter. As the court has noted, the government or the immigration judge made several important findings regarding fraudulent documents, inconsistencies and implausibilities. The most important finding that the immigration judge made for purposes of providing a clear and easy way for this court to affirm the agency was the finding that Petitioner failed to provide any corroborating evidence from his wife regarding her alleged arrest or abduction. That event goes to the heart of Petitioner's claim because he said he left Armenia to free his family, which had allegedly been detained to force Petitioner to leave Armenia. So are you arguing the new requirement in the Real ID Act as to corroboration that it applies to this case? Your Honor, I know that the government's brief cited the Real ID Act regarding the standard of review in this matter. I actually don't believe that that standard of review will make any difference to the court's outcome in this case. I mean, the requirement, the specific requirement of corroboration in the Real ID Act. That's retroactive, right? Your Honor, the provision regarding the standard of review for this court is retroactive. However, the provisions regarding the requirement of corroboration in the immigration court are not retroactive and they do not apply to this case. It's somewhat contradictory and I think the court can avoid that issue. Okay. Let me ask you another question. Is there, now I'm going to separate out the frivolous application from the asylum and CAT claims. What evidence is there in the record that Diperian knew that the two documents were fraudulent? Well, Your Honor, we know that he made an inconsistent statement at the airport and I believe that it is proper to infer from that that he knew that other things in the record were also untrue. I think that's the strongest argument I have. Which inconsistent statement are you referring to? That would be the airport statement where he said when asked who was persecuting him, he said just groups, not the police. He did make some inconsistent statements. Okay, but here, now directing you to the frivolous application finding, doesn't the Code of Federal Regulations rather expressly speak to the requirement that the IJ make a specific finding as to knowledge? I'm not aware of that, Your Honor, and I'm not sure that that was cited in the blue brief. It says only if a final order by an immigration judge or the Board of Immigration Appeals specifically finds that the alien knowingly filed a frivolous asylum application will it be deemed such. Your Honor, the only response that I have to that is here we have an immigration judge who made a frivolous finding on the last page of his decision. Actually, that was a conclusion. Yes, I think it was on the last page, but it was part of the conclusion. Right. And I would simply cite the Court's pages 82 and 89 of the administrative record where the immigration judge sets out to the petitioner exactly what the standard is for a frivolous application. I can only say that you can infer from the record that he was applying the correct standard when he made that ultimate conclusion. Pages 82 and 89? Yes, Your Honor. Okay. And that if the IJ, and it's not a technicality, right, because the finding of frivolous application is really serious. It is, Your Honor. It will preclude him from all relief, that's correct, forevermore. Right. And so it's not a technicality that that finding is required. I would agree that it is an important finding, Your Honor. If I may return to the point that I'm making about the importance of the need for corroborating evidence, this Court said in Sidhu and a line of cases that followed that, that if the immigration judge has reason to question the credibility of the alien, if the alien could be expected to come up with corroborating evidence that is material, non-duplicative, and easily available, and the alien then fails to provide a credible explanation for not providing that information, that is sufficient to support an adverse credibility finding. That is exactly the rule that applies in this case. There is ample evidence on which the immigration judge could at least question the credibility of the alien in this case. The fraudulent documents, the inconsistent statement at the airport, the implausible testimony regarding whether other people were arrested at the demonstrations. With all of that, the immigration judge and the DHS attorney could expect corroborating evidence and ask for it specifically in the first hearing in June of 2003. That may be true with respect to the adverse credibility, but when it gets to the frivolous application, in our case, FARA, in 2003, we held that the alien had to have a proper opportunity to explain all discrepancies in the record underlying an adverse, rather a frivolous application finding. That didn't happen in this case, did it, Counsel? Well, Your Honor, I can only cite to the questions that were asked during the hearing, both by the DHS attorney and by the immigration judge. I think that several of the discrepancies were confronted or were presented to the alien for an explanation. Whether or not all of them were, I don't think that they all were, but the alien also had counsel. He didn't complain at the time that he hadn't been offered the opportunity to explain everything. That's about all I can say on that point. Did he have the opportunity to discuss his knowledge of or his explanation for the two key documents that the I.J. relied on? Referring to the medical report? And the police report. I don't believe that he was specifically asked to explain why the evidence supported a finding that those documents were fraudulent. Or if he knew? I don't think he was specifically confronted with that. Regarding the frivolousness finding, though, I would also point out that the government has asserted in a footnote towards the end of the brief that the alien did not exhaust that issue. There is no mention of the frivolous finding in the pro se brief to the board. The petitioner has cited the recent in-bank decision in a B-Bay, I believe it is, as a way of overcoming the exhaustion problem. I would say that a B-Bay is distinguishable. A B-Bay is a case where you have a Burbano Affirmance by the board and they effectively adopt all that the I.J. had to say in that case. Here, however, you have a Summary Affirmance and the BIA regulations specifically say that they're not adopting everything that an I.J. does in that particular case. So I don't think that you can infer exhaustion simply from a Summary Affirmance. I'd also point out that it is a fairly extensive pro se brief that was filed with the board. But again, I do concede that it was pro se at the time. Regarding the SIDHU analysis, I think that once you have a reason to question the credibility, you can reasonably expect the alien to come forward with available evidence. Here, he said that his wife had provided documents. In addition, this Court has previously looked to documents that could be obtained from foreign countries to support an adverse credibility finding. That was both in the Chebchow case and also in the Li case. In Chebchow, I believe the affidavit could have been obtained from France. In Li, it would be from China. So the fact that the alien's wife apparently was in Armenia is not reason alone to say that he shouldn't have provided an affidavit from her. Finally, regarding his explanation about why he didn't provide that document, he was specifically asked why he didn't do that. It was the DHS attorney who asked him. His response was he thought that his testimony would be enough. I would point the Court to the end of the SIDHU decision at page 220, Fed 3rd, 1092. At that point, the Court said, We're going to remand this case because we're going to let the alien explain why he didn't come forward with corroborating evidence. We've now announced a new standard. We would not remand this case in the future because here we've announced the standard. Everyone should know that if there's reason to question credibility, they should be coming forward with corroborating evidence. Now, the alien in this case, his case was decided long after SIDHU. SIDHU is a 2000 case. The proceedings here were 2003. And his explanation about why he did not provide the corroborating evidence is simply irrelevant. All he is saying is, I thought it was enough that I would be here to testify. Well, that's simply saying that he and his attorney were not aware of the SIDHU regulation, and I don't believe that's an adequate explanation. So for all those reasons, I believe that the adverse credibility is well-founded. The Court should deny the petition for review. If there are no other questions, I'll submit with that. Thank you very much. First of all, again, with regard to the corroborating evidence, the SIDHU Court also says that they don't assume that this is the easiest thing to get. And then the other thing is that the judge did not address why that wasn't the reason. But the other thing is that there were things that were led into evidence in this case, like his membership card, to show that he was involved, that he was in the party that he sat. So that part is certainly not an issue. And, again, for reasons I talked about in the brief, the airport interview should be given very, very little weight, especially in light of Singh. And I just think that in many instances, Mr. Duparian was either not confronted or there was just a lot of irrelevant conjecture. So I don't have much time, so I'm going to stop. Thank you. Thanks, Mr. Davis. The matter just argued will be submitted.
judges: Rymer, Wardlaw, Smith